[Cite as *Rather v. Rather*, 2015-Ohio-4210.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
ERIE COUNTY

Danielle Rather

    Appellee

v.

Bryan Rather

    Appellant

Court of Appeals No. E-13-071

Trial Court No. 2011 DR 0019

**DECISION AND JUDGMENT**

Decided: October 9, 2015

* * * * *

Thomas R. Sprunk, for appellee.

Loretta Riddle, for appellant.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} This is an appeal from a judgment of the Erie County Court of Common Pleas which, in relevant part, modified defendant-appellant, Bryan Rather's visitation rights with his minor children. Appellant now challenges that order through the following assignment of error:

The trial court committed error and prejudiced Mr. Rather by granting Ms. Rather's motion for modification of custody and ordering Mr. Rather to have supervised visitation.

{¶ 2} The facts of this case are as follows. Appellant and plaintiff-appellee, Danielle Rather, were divorced by a judgment entry of divorce entered by the lower court on June 28, 2011. In that entry, appellee was designated the residential parent and legal custodian of the parties' two minor children, who were born in 2002 and 2005, and appellant was granted liberal parenting time with the children as to be mutually agreed upon by the parties. Because the parties could not agree to a schedule, they were ordered to follow the court's Local Rule 24 standard parenting time schedule, with the modification that appellant was to have the children for a mid-week visit on each Thursday from 4:00 p.m. until 8:00 p.m.

{¶ 3} On January 29, 2013, appellee filed a motion to modify appellant's parenting time with the minor children. Appellee asserted that appellant had never exercised his visitation on Thursdays due to conflicts in his schedule. Appellee further asserted that because appellant had been physically and verbally assaultive toward her, direct communication between the two was difficult. She therefore asked the court to modify the visitation schedule so that appellant would have visitation with the children every other weekend, with exchanges to take place at KinShip House, in Huron, Ohio, and that appellant no longer have Thursday night visitation. In her affidavit attached to that motion, appellee discussed and documented appellant's history of alcohol abuse.

2.

Appellee further filed a motion for an in camera interview of the children. The court subsequently granted the motion for an in camera interview of the children.

{¶ 4} On March 13, 2013, appellee filed an amendment to her motion to modify appellant's parenting time, after appellant was arrested and charged with operating a vehicle while under the influence of alcohol. The motion asserted that appellant had been arrested on Friday March 8, 2013, at 6:13 p.m., having been found passed out in the driver's seat of his vehicle, which was running. According to the police report that was attached to the motion, appellant was intoxicated, had an open container in the vehicle, and had urinated on himself. In her amendment, appellee noted that appellant was to have picked up the children at 6:00 that evening for the scheduled weekend parenting time. Appellee then requested that the court suspend appellant's regular parenting time and order appellant's parenting time to be supervised through KinShip House, for a minimum of two hours a week, until further hearing. Appellee further requested that the court order appellant to complete an alcohol assessment and to comply with all of the recommendations of the assessment before requesting the court to modify the supervised visitation.

{¶ 5} On April 1, 2013, the case proceeded to a hearing before a magistrate, at which appellant, appellee, Tracy Kowpak, the children's caregiver, and Lieutenant Chris Hilton and Lieutenant Vincent Donald, of the Perkins Township Police Department, testified. Appellee, Kowpak and Hilton testified regarding specific incidents in which

3.

appellant had visitation or was to have visitation with the children since the parties' divorce.

{¶ 6} The testimony revealed appellant's history of inconsistency in visits with his children and his history of alcohol abuse.

{¶ 7} Appellee testified that since the parties' divorce, appellant was to exercise visitation with the children on Thursdays from 4:00 p.m. to 8:00 p.m. and every other weekend, from 6:00 p.m. on Fridays until 6:00 p.m. on Sundays. Because he was studying to be a welder, however, he never exercised the Thursday evening visits until February 2013. In addition, he could not have a Thursday overnight visit because he did not have a driver's license and would not be able to take the boys to school on Friday mornings. The boys did see their father regularly in 2011 for weekend visits, but appellee testified that either she or Tracy Kowpak, the children's long term caregiver, provided transportation for those visits. Appellee then testified to a series of incidents in 2012 during which she or Kowpak attempted to drop the children off at appellant's home for visitation but appellant was not there and had left no word as to his whereabouts. As a result, appellant rarely exercised visitation with his children from January to May, 2012.

{¶ 8} Appellee further testified regarding the history of conflict between the parties with regard to visitation. The court's standard parenting time schedule allows for either the parent or a responsible adult that is well-known to the children to provide transportation. Appellant, however, has refused to release the boys to Kowpak, who has

4.

been their day care provider for six years. On at least one occasion, appellant demanded that appellee pick up the boys at the end of her work shift, which on that day was 11:00 p.m. As a result, A.R., who has Asperger's Syndrome, was late taking his medication.

{¶ 9} On another occasion, September 9, 2012, appellee arrived at appellant's home to pick up the children, as scheduled at 6:00 p.m., following appellant's visit with them, but they were not there. Appellee contacted appellant by phone, but appellant told her he would be a while. Eventually, appellee began to drive around and found appellant and the boys walking along a road. Appellee then drove appellant and the boys back to appellant's home to retrieve the boys' belongings. Appellee testified that appellant smelled of alcohol. She further stated that during that encounter, they got into a heated exchange and appellant spit chewing tobacco on her. Appellee then called the police. Lieutenant Chris Hilton responded to the call. Hilton testified that he could tell appellant had been drinking because he smelled of alcohol. Eventually, because of appellant's behavior which included swearing and making obscene gestures, all witnessed by the children, Hilton placed appellant under arrest and charged him with persistent disorderly intoxication. He further testified that had the children been alone with appellant and appellee not been present, he likely would have charged appellant with child endangering.

{¶ 10} Finally, Lieutenant Vincent Donald testified to an incident that occurred on the evening of Friday, March 8, 2013. Donald responded to a call from dispatch that a male was in a truck in the mall parking lot, either passed out or sick, slumped over the

5.

steering wheel. When Donald arrived, he found appellant passed out in the driver's seat of the truck, with the motor running. Donald opened the door and shook appellant awake. Talking to appellant, Donald immediately smelled intoxicants on or about his person. Appellant ultimately registered a .128 on a portable breath test and was placed under arrest. In patting down appellant prior to placing him in the back of his patrol vehicle, Donald realized appellant's pants were wet and he had urinated on himself. Once placed under arrest, appellant became very uncooperative and abusive. This incident occurred shortly after 6:00 p.m. on an evening when appellant was scheduled to pick up his children for a weekend visitation.

{¶ 11} On May 7, 2013, the magistrate issued findings of fact and conclusions of law. The court determined that the testimony established that appellant does not make prior arrangements when he is going to be late for visits, will not release the children on time at the end of visits, will not release the children to their well-known day care provider, has not been at home with the children at the conclusion of parenting time and will arrive late at the beginning of his parenting time. For all of these reasons, along with the evidence of the September 9, 2012, and March 8, 2013 incidents, the court concluded that the exchanges needed to be monitored by a third party to insure compliance with the visitation schedule and appellant's sobriety. The court noted that appellant's behavior with alcohol, as related in the testimony, indicates that he may have a serious problem with alcohol. The magistrate, therefore, recommended that all future visitations between appellant and the children be supervised at the KinShip House and that such supervised

6.

visitation was in the best interest of the children. The magistrate further recommended that the visitation be supervised until appellant has an opportunity to complete an alcohol assessment at Firelands Counseling and Recovery Services and follow all recommendations.

{¶ 12} Appellant filed objections to the magistrate's decision. Appellant asserted that appellee had not presented any change of circumstances that would support a change in the prior order of visitation. He further argued that there was no evidence that he presented any risk of harm to appellee or the children.

{¶ 13} On October 8, 2013, the lower court issued a judgment entry on appellant's objections. Having reviewed the entire record, the court granted appellee's motion for supervised visits and ordered future visits between appellant and the children to be supervised at KinShip House. The court further ordered appellant's supervised parenting time to be for a minimum of two hours a week at a time mutually agreed upon by KinShip House, appellee and appellant. Finally, the court determined that it would consider further modification of the visitation order upon appellant's successful completion of an alcohol assessment at Firelands Counseling and Recovery Services and his following all recommendations from that assessment. Appellant now challenges that judgment on appeal.

{¶ 14} In his sole assignment of error, appellant asserts that the lower court abused its discretion in granting appellee's motion for modification of custody and ordering appellant's visitation with his children to be supervised. He argues that because appellee

7.

did not establish that there had been a change in circumstances and because there was no evidence that appellant presented any risk of harm to appellee or the children, the court erred in ordering supervised visitation.

{¶ 15} Contrary to appellant's assertion, the lower court did not modify custody. The court modified the terms of appellant's visitation with his children. A "party requesting a change in visitation rights need make no showing that there has been a change in circumstances in order for the court to modify those rights." *Braatz v. Braatz*, 85 Ohio St.3d 40, 706 N.E.2d 1218 (1999), paragraph two of the syllabus. Rather, a "[m]odification of visitation rights is governed by R.C. 3109.051." *Id.* at paragraph one of the syllabus. "Pursuant to R.C. 3109.051(D), the trial court shall consider the fifteen factors enumerated therein, and in its sound discretion shall determine visitation that is in the best interest of the child." *Id.* at paragraph two of the syllabus.

{¶ 16} Upon review, an appellate court will not reverse the trial court's determinations as to visitation issues absent an abuse of discretion. *In re Whaley*, 86 Ohio App.3d 304, 317, 620 N.E.2d 954 (4th Dist.1993), citing *Booth v. Booth*, 44 Ohio St.3d 142, 541 N.E.2d 1028 (1989). An abuse of discretion implies that the court's attitude in reaching its decision was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d. 217, 219, 450 N.E.2d 1140 (1983). Moreover, an appellate court will defer to a trial court's factual resolutions of conflicting opinions and testimony, as the trial court is in the best position to observe the witnesses' voice

8.

inflections, demeanor, and gestures, to assess credibility. *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984).

{¶ 17} R.C. 3109.051(D) provides in relevant part:

In determining whether to grant parenting time to a parent pursuant to this section * * *, in establishing a specific parenting time or visitation schedule, and in determining other parenting time matters under this section * * * or visitation matters under this section * * *, the court shall consider all of the following:

(1) The prior interaction and interrelationships of the child with the child's parents, siblings and other persons related by consanguinity or affinity * * *;

(2) The geographical location of the residence of each parent and the distance between those residences * * *;

(3) The child's and parents' available time, including, but not limited to, each parents' employment schedule, the child's school schedule, and the child's and the parents' holiday and vacation schedule;

(4) The age of the child;

(5) The child's adjustment to home, school, and community;

(6) If the court has interviewed the child in chambers, pursuant to division (C) of this section, regarding the wishes and concerns of the child as to parenting time by the parent who is not the residential parent * * *, as

to a specific parenting time or visitation schedule, or as to other parenting time or visitation matters, the wishes and concerns of the child, as expressed to the court;

(7) The health and safety of the child;

(8) The amount of time that will be available for the child to spend with siblings;

(9) The mental and physical health of all parties;

(10) Each parent's willingness to reschedule missed parenting time and to facilitate the other parent's parenting time rights * * *;

(11) In relation to parenting time, whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of the adjudication; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

* * *

(13) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(14) Whether either parent has established a residence or is planning to establish a residence outside this state;

* * *

(16) Any other factor in the best interest of the child.

{¶ 18} Although the lower court did not expressly state in its decision the factors it found relevant to its determination, the record clearly contains evidence on a number of the R.C. 3109.051(D) factors and supports the court's order that appellant's visitation with the children be supervised. Appellant's clear problem with alcohol, which has been witnessed by his children, and his consistent prevention of a seamless transfer of the children before and after his parenting time, are but two of the factors that support the court's decision. It is also noteworthy that the court did conduct an in camera interview of the boys in reaching its decision.

{¶ 19} Upon a thorough review of the record, we cannot say that the lower court abused its discretion in modifying appellant's visitation time and ordering that it be supervised. Appellant's sole assignment of error is not well-taken.

11.

{¶ 20} On consideration whereof, the court finds that substantial justice has been done the party complaining and the judgment of the Erie County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

_____
JUDGE

Arlene Singer, J.

_____
JUDGE

Thomas J. Osowik, J.
CONCUR.

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.sconet.state.oh.us/rod/newpdf/?source=6.