[Cite as *Kelley v. Kelley*, 2020-Ohio-1535.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

Kristin J. Kelley

    Appellee

v.

Gregory A. Kelley

    Appellant

Court of Appeals No. WD-19-073

Trial Court No. 2016 DR 0216

**DECISION AND JUDGMENT**

Decided: April 17, 2020

* * * * *

Martin J. Holmes, Sr., for appellee.

Brian D. Smith, for appellant.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} Appellant, Gregory Kelley, appeals the August 22, 2019 judgment of the Wood County Court of Common Pleas, Domestic Relations Division, which adopted the magistrate's decision and altered Gregory's visitation with his minor children, J.K. and L.K. For the reasons that follow, we affirm.

## I. Facts and Procedural Background

{¶ 2} On April 29, 2000, Gregory married appellee, Kristin Kelley. The parties have two children: J.K., born in 2006, and L.K., born in 2007. On December 16, 2016, Kristin filed a complaint for a divorce. Following extensive litigation, on May 30, 2018, the trial court entered its judgment granting the parties a divorce.

{¶ 3} In its May 30, 2018 decision, the trial court found that Gregory has spent a significant amount of time as the children's caregiver because of his history of part-time employment, and his ability to work from home. However, the trial court did find some concerning behavior on Gregory's part. In December 2015, while in New York City, J.K. wandered off. After finding J.K., Gregory slapped him in the head, causing J.K. to bleed behind his ear. In April 2016, during an argument, Gregory hit J.K. on the head, causing him to scream and cry. After the April 2016 incident, Gregory sought help from a professional. In November 2016, upon learning that Kristin was having an affair, Gregory pushed her on the bed, choked her, and slapped her. After the divorce proceedings were initiated, Gregory violated a civil protection order through his contact with Kristin, which resulted in him spending three days in jail. Gregory then violated the terms of his probation two more times, resulting in him serving a total of 46 more days in jail in the spring and summer of 2017. Following his release from jail, Gregory contacted the police on at least four occasions regarding issues with visitation and contact with Kristin.

2.

{¶ 4} As part of the judgment, the trial court named Kristin the residential parent. Gregory was awarded visitation pursuant to the court's local schedule, with some modifications. The modifications included that instead of one mid-week visitation, Gregory would have the children from after school until 8:00 p.m. on Tuesday and Wednesday during the school year, and from 9:00 a.m. on Tuesday to 8:00 p.m. on Wednesday during the summer. In addition, Gregory would have visitation on alternating weekends from after school on Friday until Sunday at 6:00 p.m. During the summer, the Friday visitation time would begin at 3:00 p.m.

{¶ 5} Approximately two months after the entry of divorce, on August 6, 2018, Kristin filed an emergency motion to modify parenting time. In the motion, Kristin alleged that during an August 2, 2018 counseling session, the children informed their counselor that Gregory had been drinking heavily during his parenting time, and then driving the children. In addition, the children reported that Gregory has been physical with them and has used fear as a means of discipline, and that they were afraid of him. The counselor contacted children's services. Kristin requested that the court suspend any future parenting time until the investigation was completed, and then review the issue of parenting time for Gregory.

{¶ 6} In response to the motion, the trial court suspended Gregory's visitation, with the exception of a one-and-one-half hour supervised visitation once a week. However, Kristin did not fill out the intake form for the supervised visitation until August 23, 2018. Thus, Gregory was unable to have visitation with the children for

3.

approximately three weeks.  On August 24, 2018, the trial court expanded Gregory's visitation to having dinner at a restaurant on Wednesday and Saturday nights.  The court also appointed attorney Thomas Goodwin as guardian ad litem.  Goodwin had previously served as a guardian ad litem during the divorce.

{¶ 7} The matter then came for a hearing on February 5 and April 5, 2019.  At the February 5, 2019 hearing, Kristin testified regarding a number of incidents with Gregory.

{¶ 8} One of the incidents occurred on Saturday, September 8, 2018.  The day before, Kristin had messaged Gregory through Our Family Wizard, notifying him that the children's sitter would be picking the children up after his visit.  During the visit, the children called Kristin, frantic that Gregory was refusing to take them back to the drop-off.  L.K., in particular, was screaming and crying hysterically.  Kristin learned that L.K. had jumped out of Gregory's truck while in a Pizza Hut parking lot, and ran away from Gregory screaming "Get away from me."  A police officer who was responding to another call, heard the commotion and came to investigate.  Ultimately, the children were returned to the sitter at the appointed time.

{¶ 9} As a result of this incident, except for one occasion, L.K. has refused to go to visitations with Gregory.  On January 28, 2019, L.K.'s pediatrician diagnosed him with post-traumatic stress disorder stemming from the September 8, 2018 incident.  At the January 28, 2019 appointment, the pediatrician and L.K. also discussed L.K.'s thoughts of hurting himself, and the pediatrician made an agreement with L.K. that if L.K. ever progressed from thinking about hurting himself to making plans to hurt himself that L.K.

4.

would contact his counselor, the pediatrician, or Kristin. Kristin provided to Gregory the report indicating that suicide issues were discussed, and an agreement was made.

{¶ 10} Other instances testified to by Kristin involved times when Gregory would not return J.K. on time, or would take J.K. to Kristin's house to pick up things despite that being against the terms of the court order. In addition, Kristin testified generally as to J.K.'s behavior following visitations with Gregory. Kristin testified that for an hour or two after the visitation, J.K. would be disrespectful towards her, would make comments to her that are unflattering, would be angry, would lie, may tell inappropriate jokes about women, and would both physically and verbally fight with L.K.

{¶ 11} On cross-examination, Kristin admitted that she drinks approximately two glasses of wine per week during her parenting time with the children, despite the court order stating that neither party shall consume alcohol. She also admitted that she expressed concern regarding Gregory spending additional time with the children during hockey practice, stating to him via Our Family Wizard:

> Every time you insert yourself into the boy's schedule things get messy, overcomplicated, or just plain incorrect. Again, if these events don't fall within your visitation times you shouldn't be attending or inserting yourself. Time and again you show your unwillingness to work with me as you are solely focused on asserting blame.

Kristin also admitted that she has referred to Gregory being a "visitor" in their lives. She explained that her frustration with Gregory is that he is not being the

5.

children's father, he is being a visitor, and he is not even doing that well right now.

{¶ 12} Kristin concluded that, in her opinion, it would not be in J.K.'s interest to have any increase in visitation time with Gregory above the Wednesday and Saturday night dinners. Regarding L.K., Kristin testified that she was hopeful that with time and counseling, L.K. would want to reengage with Gregory, but she thought that it should come in L.K.'s time and not be forced upon him.

{¶ 13} Gregory then testified on his own behalf, largely during the April 5, 2019 hearing. He testified that before August 1, 2018, he had a good relationship with his children. He described that they had done a lot of fun things together, including riding four wheelers, playing hockey, and going camping.

{¶ 14} In particular, Gregory testified about a family vacation that they took from July 21 to July 28, 2018, at Wampler's Lake in Michigan. Gregory testified that while at the lake, the children did a lot of boating activities. Gregory also described that J.K. needed to be disciplined a couple of times for being unsafe on the jet ski, damaging a neighbor's fence with his ATV, and listening to something that he should not have been listening to on his phone. None of the disciplines described by Gregory involved corporal punishment. Gregory then acknowledged that while they were on vacation, he drank alcohol, up to three or four beers a day. He testified, though, that at no point did he drink and then drive in a car with the kids.

6.

{¶ 15} Gregory returned the children to Kristin as scheduled on Saturday, July 28, 2018. He then had his regular summer visitation with the children from Tuesday morning, July 31, 2018, to Wednesday evening, August 1, 2018.

{¶ 16} Thereafter, Gregory testified that his parenting time was rescinded, and he was interviewed by someone from children's services. On August 30, 2018, Gregory received a letter from children's services, informing him that the case with the agency was closed, and recommending that he "not harm the children emotionally or physically, or drink and drive with them."

{¶ 17} Gregory testified that since September 2018, his parenting time with L.K. has increased. Gregory testified that L.K. has been consistently attending parenting time since early February 2019, and that he now sees him on average about four days a week.

{¶ 18} Gregory next testified regarding some of Kristin's conduct as the residential parent. Gregory stated that Kristin has cancelled events between him and the children at the last minute, and that she did not allow him to spend the agreed upon time with the children over the Christmas break. In addition, Gregory testified that Kristin has caused the children to miss several appointments with doctors, and has been lax in taking them to the dentist. Gregory further testified that Kristin has called him derogatory names, is condescending to him, and lies to him.

{¶ 19} Ultimately, Gregory concluded that it would be in the children's best interests to return to the visitation schedule provided for in the divorce decree.

7.

{¶ 20} Finally, Goodwin, the guardian ad litem, testified. Goodwin testified that it is his recommendation that Gregory should have visitations according to the local court schedule with J.K., and for L.K.'s visitations to increase as he feels more comfortable, eventually going to the local court schedule. Goodwin further testified that the local court schedule should be modified to reduce Gregory's summer visitation to two non-consecutive weeks.

{¶ 21} Following the hearings, the parties submitted their proposed findings of fact and conclusions of law. On May 13, 2019, the magistrate issued his decision, which painstakingly reviewed the testimony and evidence presented at the hearings. The magistrate further identified and discussed each factor under R.C. 3109.051(D) in his determination of the appropriate visitation schedule. Upon reviewing all the evidence, the magistrate concluded that parenting time in accordance with the guardian ad litem's recommendation was in the best interest of the children. Thus, the magistrate ordered that Gregory shall have parenting time pursuant to the court's local schedule with several modifications. First, L.K.'s participation in parenting time shall be as determined by L.K. Second, Gregory shall exercise parenting time on alternating weekends from after school on Friday to 6:00 p.m. on Sunday. During the summer, Gregory's parenting time shall begin at 3:00 p.m. on Friday. Third, Gregory shall have two non-consecutive weeks of vacation with the children during the summer, as long as L.K. wishes to participate.

{¶ 22} On May 24, 2019, Gregory filed his objections to the magistrate's decision, and motion for leave to supplement the objections upon preparation of the transcript from

8.

the February 5 and April 5, 2019 hearings. The only objection raised in Gregory's motion was that the manifest weight of the evidence does not support the magistrate's finding that the declared visitation schedule was in the best interests of the children. On July 17, 2019, Gregory filed his supplemental objections to the magistrate's decision. In his supplemental objections, Gregory argued that there was a lack of evidence to support the underlying allegations of physical danger to the children in Kristin's emergency motion. He also argued that the guardian ad litem's investigation was incomplete and that the guardian's report contained mischaracterizations. Finally, he argued that the magistrate's decision did not give appropriate consideration to Kristin's failure to facilitate a positive relationship between the children and Gregory. Kristin responded to Gregory's supplemental objections on August 6, 2019.

{¶ 23} On August 22, 2019, the trial court entered its judgment approving and adopting the magistrate's decision. In its order, the trial court found that the magistrate's decision was not against the manifest weight of the evidence, and that it does consider the best interests of the children. The court then approved the magistrate's decision "upon full consideration of the objections filed, and having fully and independently considered the May 13, 2019 Magistrate's Decision (65 pages), all pertinent pleadings, memoranda, authorities, and information filed or provided to the Court, as well as the February 5, 2019 (251 pages) and April 5, 2019 (81 pages) hearing transcripts and exhibits."

9.

## II. Assignments of Error

{¶ 24} Gregory has timely appealed the trial court's August 22, 2019 judgment entry, asserting four assignments of error for our review:

1. The trial court erred by reviewing the Magistrate's Decision on a "manifest weight" standard of review.

2. The trial court erred by modifying the routine parenting time schedule of Defendant/Appellant.

3. The trial court erred by making Defendant/Appellant's parenting time with one of the minor children, solely in the discretion of the minor child.

4. The trial court erred by modifying the Defendant/Appellant's parenting time to less than the Wood County Local Parenting time schedule.

## III. Analysis

### A. Trial Court's Review of the Magistrate's Decision

{¶ 25} In his first assignment of error, Gregory argues that the trial court erred and applied the wrong standard when it found that the magistrate's decision was not against the manifest weight of the evidence. In particular, Gregory contends that the manifest weight standard is an appellate standard, and is not consistent with the trial court's obligation to conduct a full and independent review of the facts and conclusions.

**{¶ 26}** Civ.R. 53(D)(4)(a) provides that a magistrate's decision is not effective unless adopted by the court. Civ.R. 53(D)(4)(d) provides, "If one or more objections to a magistrate's decision are timely filed, the court shall rule on those objections. In ruling on objections, the court shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law."

**{¶ 27}** "In accordance with Civ.R. 53, the trial court must conduct an independent review of the facts and conclusions contained in the magistrate's report and recommendations and enter its own judgment." *Kovacs v. Kovacs*, 6th Dist. Erie No. E-03-051, 2004-Ohio-2777, ¶ 6. Because we presume regularity in the proceedings below, "we generally presume that the trial court conducted its independent analysis in reviewing the magistrate's decision." *Mahlerwein v. Mahlerwein*, 160 Ohio App.3d 564, 2005-Ohio-1835, 828 N.E.2d 153, ¶ 47 (4th Dist.). "Accordingly, 'the party asserting error bears the burden of *affirmatively* demonstrating the trial court's failure to perform its Civ.R. 53([D]) duty of independent analysis.'" (Emphasis sic.) *Id.*, quoting *State ex rel. Scioto Cty. Child Support Enforcement Agency v. Adams*, 4th Dist. Scioto No. 98CA2617, 1999 WL 597257 (July 23, 1999); *see also Inman v. Inman*, 101 Ohio App.3d 115, 118-119, 655 N.E.2d 199 (2d Dist.1995) (holding that the appellant must "make an affirmative demonstration that the trial court did not conduct an independent analysis of the issues raised at the evidentiary hearing before the referee").

{¶ 28} In *Kovacs*, the record affirmatively demonstrated that the trial court failed to conduct an independent analysis of a magistrate's decision granting a protective order. In that case, the trial court applied an abuse of discretion standard, and expressly "deferred to the magistrate's factual findings and decision, including the credibility of the witnesses." *Kovacs* at ¶ 8. Thus, we held that the judgment must be reversed, and the matter remanded for an independent review. *Id.* at ¶ 9.

{¶ 29} Similarly, in *Inman*, the Second District held that the appellant affirmatively demonstrated that the trial court did not conduct an independent review of the magistrate's decision granting custody of the minor children to her ex-husband. There, the trial court's judgment entry referred to "any objections timely filed," which suggested to the Second District that the judgment was a form decision. Further, the court noted that the judgment was entered 25 hours after the ex-husband responded to the objections, despite the record containing a magistrate's decision that was 20 pages long, 28 pages of objections, a 16-page response to the objections, and a 180-page transcript. The trial court's judgment also gave no indication that it reviewed the transcript. In addition, the Second District found that even a cursory review of the magistrate's report and findings of fact would "instantaneously raise questions as to the admissibility of evidence upon which the [magistrate's] recommendation was premised," but the trial court adopted those findings without any explanation. *Inman* at 119-120. From those facts, the Second District concluded that the appellant met her burden to overcome the

12.

presumption of regularity of the trial court's proceedings, and it held that the trial court failed to satisfy its duty to make and enter its own independent judgment. *Id.* at 120-121.

{¶ 30} In contrast, in *Mahlerwein*, the Fourth District held that the appellant did not meet her burden to demonstrate that the trial court failed to independently review a magistrate's decision. In that case, the trial court conducted a hearing in chambers on the appellant's objections, and three days later entered its judgment overruling the objections and adopting the magistrate's amended decision. The Fourth District discounted the short time between the hearing and the decision, however, finding that the appellant's objections and transcript had been filed for approximately three months before the hearing. Furthermore, the Fourth District cited the fact that a hearing was held on the objections as evidence that the trial court independently reviewed the magistrate's decision. *Mahlerwein* at ¶ 52.

{¶ 31} Here, unlike *Inman*, the trial court entered its judgment approving and adopting the magistrate's decision approximately two weeks after Kristin responded to Gregory's supplemental objections, which is sufficient time to consider the record in this matter. In addition, there was no indication from the magistrate's decision or the hearing transcript that there were evidentiary issues that would undermine the magistrate's conclusions, nor is there any indication that the trial court's judgment entry was merely a form entry. Furthermore, while we recognize that the trial court stated that the magistrate's decision was not against the manifest weight of the evidence, we find the probative value of this statement to be low considering that Gregory's sole objection was

13.

that the magistrate's decision was against the manifest weight of the evidence. Finally, the trial court followed the manifest weight statement by expressly stating that it fully and independently reviewed the record and the magistrate's decision, thus distinguishing this case from *Kovacs*. Therefore, we hold that Gregory has not met his burden to affirmatively demonstrate that the trial court failed to conduct a full and independent review of the magistrate's decision.

{¶ 32} Accordingly, Gregory's first assignment of error is not well-taken.

### B. Merits of Decision Establishing Parenting Time Schedule

{¶ 33} In his second, third, and fourth assignments of error, Gregory argues that the trial court erred in modifying the parenting time schedule. Specifically, in his second assignment of error, Gregory argues that the trial court failed to properly evaluate all of the factors under R.C. 3109.051(D). In his third assignment of error, Gregory argues that the trial court abused its discretion in making parenting time with L.K. solely at L.K.'s discretion. In his fourth assignment of error, Gregory argues that the trial court erred by modifying his parenting time to less than the court's local schedule.

{¶ 34} A "party requesting a change in visitation rights need make no showing that there has been a change in circumstances in order for the court to modify those rights." *Braatz v. Braatz*, 85 Ohio St.3d 40, 706 N.E.2d 1218 (1999), paragraph two of the syllabus. Rather, a "[m]odification of visitation rights is governed by R.C. 3109.051." *Id.* at paragraph one of the syllabus. "Pursuant to R.C. 3109.051(D), the trial court shall consider the fifteen factors enumerated therein, and in its sound discretion

14.

shall determine visitation that is in the best interest of the child." *Id.* at paragraph two of the syllabus.

{¶ 35} "Upon review, an appellate court will not reverse the trial court's determination as to visitation issues absent an abuse of discretion." *Rather v. Rather*, 6th Dist. Erie No. E-13-071, 2015-Ohio-4210, ¶ 16; *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989). An abuse of discretion connotes that the trial court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 36} In his second assignment of error, Gregory argues that the trial court failed to evaluate all of the factors in R.C. 3109.051(D) appropriately.

{¶ 37} In particular, Gregory asserts that the trial court ignored evidence that the relationship between Gregory and the children is currently good and moving in a positive direction. However, the court, in addressing R.C. 3109.051(D)(1), did in fact find that "[J.K.] has felt comfortable with regular daytime parenting time with Gregory; [L.K.] less so, but he has seen Gregory more regularly in recent times."

{¶ 38} Gregory next asserts that the trial court ignored evidence regarding Kristin's persistent restriction and alienation of Gregory from the children. To the contrary, the court in considering R.C. 3109.051(D)(13), found that "Gregory contends Kristin failed to promptly sign up for his supervised parenting time. He generally feels Kristin plays a role in his parenting time issues. As noted, he contends Kristin reneged

15.

on an agreement for his enhanced 2018 Winter holiday time. * * * Kristin failed to provide Gregory with the address of her destination when taking a trip to Arizona."

{¶ 39} Finally, Gregory asserts that the trial court failed to consider that he has several family members who live in the area, and who provide him with a support system. However, this is not one of the enumerated criteria in R.C. 3109.051(D), and was not a main issue at the trial. Thus, we do not think the trial court abused its discretion in not specifically citing this factor in its decision.

{¶ 40} Therefore, we hold that the trial court appropriately considered the relevant evidence as it related to the factors in R.C. 3109.051(D), and did not abuse its discretion in so doing.

{¶ 41} Accordingly, Gregory's second assignment of error is not well-taken.

{¶ 42} In his third assignment of error, Gregory argues that the trial court abused its discretion in making his parenting time with L.K. at L.K.'s discretion. Gregory acknowledges that the trial court may make visitation at the discretion of the child. *See, e.g., Hagan v. Hagan*, 5th Dist. Delaware No. 18 CAF 03 0030, 2019-Ohio-51, ¶ 51; *Wilson v. Redmond*, 12th Dist. Madison No. CA2003-09-033, 2004-Ohio-3910, ¶ 12-13. But, Gregory argues that such an order was unwarranted in this case.

{¶ 43} Gregory notes that he has begun to exercise regular parenting time with L.K. again, and they are working towards phasing L.K. into spending alternate weekends with him. Gregory further contends that unlike the situations in *Hagan* and *Wilson*, L.K.'s physical and emotional health have not been negatively impacted by Gregory's

16.

parenting time. However, the record does contain evidence regarding the pediatrician's diagnosis of post-traumatic stress disorder stemming from the September 8, 2018 incident, as well as L.K.'s suicidal thoughts. Therefore, we hold that the trial court did not abuse its discretion in ordering Gregory's parenting time with L.K. to be at L.K.'s discretion.

{¶ 44} Accordingly, Gregory's third assignment of error is not well-taken.

{¶ 45} In his fourth, and final, assignment of error, Gregory contends that the trial court erred by modifying his parenting time to less than the court's local schedule, specifically as it relates to receiving only two non-consecutive weeks of vacation in the summer. Gregory does not separately argue this assignment of error, but instead relies on the arguments made in his second and third assignments of error. Upon our review of the record, we find that the trial court has thoughtfully considered the factors set forth in R.C. 3109.051(D), and weighed the evidence, including the guardian ad litem's report and recommendation, in determining its parenting time order. Therefore, we hold that the trial court did not abuse its discretion in modifying Gregory's parenting time to less than the court's local schedule.

{¶ 46} Accordingly, Gregory's fourth assignment of error is not well-taken.

### IV. Conclusion

{¶ 47} For the foregoing reasons, we find that substantial justice has been done the party complaining, and the judgment of the Wood County Court of Common Pleas,

Domestic Relations Division, is affirmed.  Gregory is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.     _____
                    JUDGE
Thomas J. Osowik, J.

Gene A. Zmuda, P.J.      _____
CONCUR.                  JUDGE

                 _____
                    JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.