[Cite as *Kelley v. Kelley*, 2020-Ohio-6778.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

Kristin J. Kelley                                    Court of Appeals No. WD-20-010

      Appellee                                     Trial Court No. 2016 DR 0216

v.

Gregory A. Kelley                                **DECISION AND JUDGMENT**

      Appellant                                    Decided:  December 18, 2020

* * * * *

Martin J. Holmes, Sr., for appellee.

Brian D. Smith, for appellant.

* * * * *

**OSOWIK, J.**

{¶ 1} This is an appeal from a judgment of the Wood County Court of Common Pleas, Domestic Relations Division, which modified the parties' parenting time schedule. For the reasons set forth below, this court affirms the judgment of the trial court.

{¶ 2} After 16 years of marriage, plaintiff-appellee Kristin J. Kelley filed a complaint for divorce from defendant-appellant Gregory A. Kelley.  The trial court

granted the parties a divorce on May 30, 2018, and determined, among other matters, the parties' parenting time schedule and visitation conditions for their two minor children. Appellee was designated the children's residential parent and legal custodian. The relevant factual and procedural background to this matter was presented in this court's decision affirming the trial court's prior determination to modify the parties' parenting time schedule, which we will not repeat here. *Kelley v. Kelley*, 6th Dist. No. WD-19-073, 2020-Ohio-1535.

{¶ 3} This appeal is in response to the trial court's January 9, 2020 modification of their parenting time schedule and visitation conditions.

{¶ 4} Appellant filed this appeal setting forth four assignments of error:

I. The trial court erred in failing to designate which parent is "Parent 1" and "Parent 2" in regard to the division of holidays, days of special meaning, and school breaks.

II. The trial court erred in restricting Appellant's parenting time in time and location while school is in session.

III. The trial court erred by modifying the Defendant/Appellant's parenting time to less than the Wood County Local Parenting time schedule.

IV. The trial court erred by having Appellant's attendance at healthcare appointments be at Appellee's discretion.

2.

**{¶ 5}** We review a trial court's determination of parenting time and visitation conditions for an abuse of discretion. *Id.* at ¶ 35. Abuse of discretion "'connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983), quoting *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980). We are mindful in domestic relations matters that "[a] reviewing court should not substitute its judgment for that of the trial court." *Snyder v. Snyder*, 6th Dist. Sandusky No. S-92-30, 1993 WL 356939, *3 (Sept. 17, 1993).

**{¶ 6}** We will address appellant's assignments of error together as they collectively challenge different aspects of the trial court's January 9, 2020 parenting time order. R.C. 3109.051(O)(4) defines a "parenting time order" as "an order establishing the amount of time that a child spends with the parent who is not the residential parent or the amount of time that the child is to be physically located with a parent under a shared parenting order."

**{¶ 7}** "Modification of visitation rights is governed by R.C. 3109.051." *Braatz v. Braatz*, 85 Ohio St.3d 40, 706 N.E.2d 1218 (1999), paragraph one of the syllabus. "The party requesting a change in visitation rights need make no showing that there has been a change in circumstances in order for the court to modify those rights. Pursuant to R.C. 3109.051(D), the trial court shall consider the [sixteen] factors enumerated therein, and in its sound discretion shall determine visitation that is in the best interest of the child." *Id.* at paragraph two of the syllabus.

3.

**{¶ 8}** The record refers to "visitation rights" and "parenting time rights" interchangeably. In a divorce, such as in this matter, involving children where the court has not issued a shared parenting order, and in accordance with R.C. 3109.051(C), the court "shall make a just and reasonable order" permitting the non-residential parent "to have parenting time with the child at the time and under the conditions that the court directs." R.C. 3109.051(A). There are exceptions to parenting time rights if the court determines it is not in the child's best interests. *Id.* When determining parenting time rights, the court "shall consider all other relevant factors, including, but not limited to, all of the factors listed in division (D) of this section." R.C. 3109.051(C). One of the factors is a catchall: "Any other factor in the best interest of the child." R.C. 3109.051(D)(16). If the trial court fails to explicitly reference the R.C. 3109.051(D) factors, we may look to the entire record to determine if the factors were considered. *In re K.M.L.*, 9th Dist. No. 17AP0009, 2018-Ohio-344, 105 N.E.3d 509, ¶ 6.

**{¶ 9}** Through his four assignments of error, we find appellant argues the trial court failed to "adequately" evaluate the parenting time factors at R.C. 3109.051(D)(1), (2), (3), (7) (10), (13) and (16). We further find that the trial court "independently considered the September 24, 2019 Magistrate's Decision" and the July 19, 2019 testimony of the court-appointed guardian ad litem for the children ("GAL"), among other evidence in the record, prior to issuing the January 9, 2020 parenting time order. We further find that the September 24, 2019 magistrate's decision contains a detailed analysis of the R.C. 3109.051(D)(1) through (16) factors, including the factors appellant

4.

raises in this appeal. Therefore, we find the record confirms the trial court "adequately" evaluated the factors appellant disputes.

### 1. R.C. 3109.051(D)(1)

{¶ 10} R.C. 3109.051(D)(1) states, "The prior interaction and interrelationships of the child with the child's parents, siblings, and other persons related by consanguinity or affinity * * *." The record shows the magistrate analyzed this factor:

> As the court noted in its May 13, 2019 Magistrate's Decision, when addressing in detail this statutory factor, "This is a complex issue, involving several years of conflict, protection orders – with violations, and counseling. The full details cannot be completely delineated in this paragraph. * * *."

> With emphasis on the short time (sic) period of time from the parties' last hearing (April 5, 2019) to the current hearing (July 19, 2019), both positive and negative circumstances have ensued. The court met with the boys *in camera* on May 3, 2019. By that time [appellant] was exercising parenting time on alternate weekends. Given the multiple motions filed, and [appellant's] objection to one aspect of the May 13 Magistrates' Decision, the parties were without a clear court-issued directive for the summer. The void was first filled by the parties with conflict over summer vacation time. However (and to their credit) the parties resolved the remaining 2019 summer vacation issues at the

5.

conclusion of the July 19 hearing. [L.K.'s] reaction to parental attendance at the June 2019 hockey camp, and the current disruption in his relationship with [appellant], parallel the pattern existing at the earlier hearings (at the July 19 hearing, [appellant] testified that he was not sure of the date of [L.K.'s] last visit with him. He agreed [L.K.] had not attended parenting time in the last two weeks).

{¶ 11} Appellant relies on the July 19, 2019 testimony of the court-appointed guardian ad litem ("GAL") for the minor children to verify that his relationship with his children "was getting better." However, we find that the GAL's testimony was not so rosy: "And my thoughts were that the children still had a strained relationship with father. It was getting better. They began seeing father more regularly, including overnight parenting time within the past months. But they still report that some of his statements and actions are troubling to them."

## 2. R.C. 3109.051(D)(2)

{¶ 12} R.C. 3109.051(D)(2) states, "The geographical location of the residence of each parent and the distance between those residences * * *." Appellant argues that he recently purchased a residence within 37 miles from appellee's residence in order to facilitate additional parenting time. However, we find the alleged fact of being 37 miles from appellee's residence is not a fact in the record before us, nor was it before the magistrate. App.R. 9(A)(1).

{¶ 13} The magistrate analyzed this factor: "[Appellant] currently lives in Perrysburg. [Appellee] and the boys (at the filing date of this decision) have moved to the Saline, Michigan area, approximately 55 miles north." The GAL testified for this factor, "Mother's intended relocation to Saline, Michigan, according to Google Maps, is 57 minutes, about 54 miles from father's current residence."

### 3. R.C. 3109.051(D)(3)

{¶ 14} R.C. 3109.051(D)(3) states as a factor, "The child's and parents' available time, including, but not limited to, each parent's employment schedule, the child's school schedule, and the child's and the parents' holiday and vacation schedule." Appellant argues that it is in the best interests of the children to receive more parenting time from him. Appellant argues he is available to receive more parenting time instead of the children receiving "situational daycare" from a babysitter hired by appellee.

{¶ 15} The magistrate analyzed this factor:

In her new position, [appellee] will work on weekdays. There may be some travel with overnight stays. [Appellant] has a flexible schedule, working in large part from his home. He apparently travels in his work, but the extent was hard for the court to fully understand. The boys engaged in homework club and school related extracurricular activities in Perrysburg. Of course, both boys are active in hockey: [L.K.] travel hockey; [J.K.] in house "rec." hockey.

7.

{¶ 16} The GAL testified for this factor:

And it did not appear to me that the current recommended parenting time, or at least that which I had recommended that the magistrate had put to a decision in May, that it did not interfere with [appellant's] parenting time that the * * * magistrate had put in an order that I recommended in May. So * * * it may have an effect on his parenting time because now it might be an hour for him to drive, an hour to come back. But he didn't explain to me that it would be a problem. But I can see that there could be * * * some issue, but I don't see it as a major issue, because it was not raised as a major issue to me.

### 4. R.C. 3109.051(D)(7)

{¶ 17} Appellant argues the trial court abused its discretion "in essentially making [appellee] have sole discretion in whether [appellant] can attend healthcare and counseling appointments for the minor children." We find appellant is challenging the trial court's evaluation of the R.C. 3109.051(D)(7) factor, "The health and safety of the child." Appellee argues that the fourth assignment of error must be dismissed because appellant failed to first raise it with the trial court.

{¶ 18} We first address appellee's claim of appellant's waiver of his fourth assignment of error for failing to raise it in appellant's October 8 and October 29, 2019 objections to the magistrate's September 24, 2019 decision. Appellee correctly identifies

8.

Civ.R. 53(D)(3)(b)(iv) as applying to this assignment of error. Civ.R. 53(D)(3)(b)(iv) states:

Waiver of right to assign adoption by court as error on appeal.

Except for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Civ.R. 53(D)(3)(b).

{¶ 19} Pursuant to Civ.R. 53(D)(3)(b)(iv), we review the record for plain error. *State ex rel. Hunley v. Dept. of Rehab. & Correction*, 156 Ohio St.3d 354, 2019-Ohio-933, 126 N.E.3d 1122, ¶ 5. "[I]n order for a court to find plain error in a civil case, an appellant must establish (1) a deviation from a legal rule, (2) that the error was obvious, and (3) that the error affected the basic fairness, integrity, or public reputation of the judicial process and therefore challenged the legitimacy of the underlying judicial process." *State v. Morgan*, 153 Ohio St.3d 196, 2017-Ohio-7565, 103 N.E.3d 784, ¶ 40. We "must proceed with the utmost caution, limiting the doctrine strictly to those extremely rare cases where exceptional circumstances require its application to prevent a manifest miscarriage of justice, and where the error complained of, if left uncorrected, would have a material adverse effect on the character of, and public confidence in, judicial proceedings." *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 121, 679 N.E.2d 1099 (1997).

9.

{¶ 20} We do not find this case presents an exceptional circumstance and does not support the elements of plain error. The magistrate determined that the healthcare diagnoses for both children require them to receive uninterrupted healthcare and counseling. "Arrangements for the boys' health care, including a new therapist in the Saline area, are underway. [Appellant] asserts that he has not been notified of the identity of the new doctors, dentists or therapist. [Appellant] and [appellee] agreed that some continuity in the boys' emotional care is important." The GAL testified, "I also considered the health and safety of the children, and there was nothing new to add [since his last report update]."

{¶ 21} The trial court's January 9, 2020 order states the following regarding the healthcare appointment scheduling for the children:

> IT IS FURTHER ORDERED that the parties may enter into agreements as to the scheduling of, and attendance at, the boys' healthcare appointments, including counseling sessions. If agreements cannot be reached, [appellee] shall schedule and attend the boys' healthcare appointments, including counseling sessions. Should the boys' counselor(s) or physician(s) recommend otherwise, the healthcare professional's recommendations shall govern, unless compliance is not reasonable. The court specifically emphasizes its continuing jurisdiction in this area, to address future proposals as events develop.

10.

IT IS FURTHER ORDERED that the parties may reach agreements as to modifications of the parenting schedule, to allow for the boys' extracurricular activities, or otherwise, if both can agree. The agreements shall be confirmed on Our Family Wizard, if time permits.

IT IS FURTHER ORDERED that to the extent possible, [appellee] shall place activities and appointments (e.g. healthcare, IEP and 504 meetings, parent-teacher conferences, school activities, concerts, hockey practices and games) on Our Family Wizard seven days before the event.

{¶ 22} We reviewed the entire record and do not find any plain error. The trial court order expects the parties to communicate using the Our Family Wizard tool and for appellee to provide appellant with seven days' notice of a child's scheduled healthcare appointment in the event they did not previously agree. Appellant assured the trial court that his work schedule was flexible.

### 5. R.C. 3109.051(D)(10)

{¶ 23} R.C. 3109.051(D)(10) states as a factor, "Each parent's willingness to reschedule missed parenting time and to facilitate the other parent's parenting time rights, and with respect to a person who requested companionship or visitation, the willingness of that person to reschedule missed visitation." The magistrate analyzed this factor:

This is another long standing area of dispute, noted herein and in prior decisions. Perhaps even before the April 5 hearing, [appellant] was seeing the boys more often that had been previously ordered. Again, the

11.

summer vacation issue was the primary focus of motion practice, disagreements and ultimately an agreement. Hopefully the Consent Magistrate's Order of July 19, 2019 closed that issue.

{¶ 24} The GAL testified regarding this factor:

I believe that they are reasonably willing to be flexible. I do see some times when scheduling major events there's not quite so much flexibility. I think they have to continue to use Our Family Wizard, so when someone says something, there's proof of what they've said.

{¶ 25} Appellant argues that the trial court did not fully consider appellee's willingness to reschedule missed parenting time or facilitating parenting time with him. Appellant argues that when appellee interfered with his summer vacation parenting time, appellee "was willing for [appellant] to have summer vacation parenting time, so long as it was during the weeks that she picked." We find the trial court acknowledged the scheduling flexibility between the parties and encouraged that throughout its parenting time order. For example, during the school year: "If the parties can agree on a mid-week day (which may require week-to-week communication), that would be optimal. If they cannot agree this mid-week parenting shall be on Wednesday from 4:00 p.m. to 8:00 p.m." And during the summer, "[S]election of the summer mid-week parenting time day(s) shall be as the parties may agree. If no agreement can be reached, the mid-week parenting time shall be on Wednesday, and when the mid-week visit is overnight shall conclude on Thursday."

12.

**6. R.C. 3109.051(D)(13)**

{¶ 26} R.C. 3109.051(D)(13) states as a factor, "Whether the residential parent * * * has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court." Appellant argues the trial court should consider appellee's actions of scheduling camps and trips for the children as "willful" interference with appellant's summer break parenting time.

{¶ 27} The magistrate analyzed this factor: "[Appellee] scheduled a flight for the boys on July 19, disregarding [appellee's] weekend. While she offered make-up time, the fact [was] that [appellee] was (sic) left in a 'really no other choice' position." The GAL testified regarding this factor:

> Father believes that mother has continuously and willfully denied his
> visitation. I would say that she has a difference of opinion on when his
> visitation is. If there has been a denial, I would say it probably is not
> continuously. They certainly do have a disagreement regarding summer of
> 2019 parenting time. That stems from the fact that father believes he's
> entitled to five weeks of vacation in the summer for 2019, pursuant to a
> court schedule. I cannot find where that court schedule for vacation time is
> in effect right now. It's my opinion that the current order that's in effect
> could be an October 12th order. I don't think there's been any written
> order since then changing [it]. And I believe that order * * * did not grant

13.

any summer vacation time, because that's when we were in the middle of * * * the last issue that arose in August.

{¶ 28} We find the trial court acknowledged the parties' communication issues:

[Appellant's] summer vacation time shall be three non-consecutive full weeks to be exercised when school is not in session, with written notice (Our Family Wizard email and addition to calendar) to [appellee] on or before May 1. After May 1, [appellee] may make summer plans for the boys that will not interfere with [appellant's] chosen three weeks. If [appellant] has not chosen his three weeks on or before May 1 and [appellee] makes summer plans, [appellant's] late choices for summer vacation shall not interfere with the boys' schedule. [Appellee] shall make reasonable efforts to not plan excessive activities as to deny [appellant] three separate full weeks of summer vacation time if he is late providing notice.

### 7. R.C. 3109.051(D)(16)

{¶ 29} Appellant also challenges the trial court's deviation from its own "Local Parenting Plan and Companionship Schedule" as part of the parenting time order. We find appellant is challenging the trial court's evaluation of the R.C. 3109.051(D)(16) catchall factor, "Any other factor in the best interest of the child."

{¶ 30} Appellant argues the trial court failed to strictly comply with its own "Local Parenting Plan and Companionship Schedule" in two ways. First, by not

14.

designating which party is labeled "Parent 1" and "Parent 2" in the section entitled, "Holidays; Mother's Day; Father's Day; School Breaks." Second, by failing to authorize appellant to five weeks of parenting time during the summer vacation break.

{¶ 31} The "Local Parenting Plan and Companionship Schedule" is mandated by the General Assembly for applicable trial courts to "adopt standard parenting time guidelines." R.C. 3109.051(F)(2). The General Assembly further mandated, "A court shall have discretion to deviate from its standard parenting time guidelines based upon factors set forth in [R.C. 3109.051(D)." *Id.*

{¶ 32} We find that although appellant has consistently raised his first assignment of error without success since originally filing its objections to the magistrate's decision, he has not shown in the record any abuse of discretion of the trial court. The trial court is not required to strictly comply with the "Local Parenting Plan and Companionship Schedule." We find that since the start of this litigation, the trial court has issued numerous temporary orders to establish and modify parenting time schedules, frequently inserting in its orders that "the general provisions of the court schedule shall apply if not inconsistent with" the schedule specified in an order. Many cycles of holidays and school breaks have occurred under the "Parent 1" and "Parent 2" rotation without labels assigned to each party. We find the record is devoid of any prejudice regarding a parenting time order due to the lack of labels of who is "Parent 1" and who is "Parent 2."

{¶ 33} We further find that appellant raised a similar, but not identical, argument to his third assignment of error in the prior appeal. In the prior appeal, appellant argued

15.

trial court error when "receiving only two non-consecutive weeks of vacation in the summer." *Kelley*, 6th Dist. Wood No. WD-19-073, 2020-Ohio-1535, at ¶ 45.  Despite the trial court now increasing appellant's summer vacation parenting time to three weeks, appellant argues he is entitled to five weeks pursuant to the "Local Parenting Plan and Companionship Schedule."  We disagree with appellant.  *Kelley*, 6th Dist. Wood No. WD-19-073, 2020-Ohio-1535, at ¶ 45.

{¶ 34} By the plain terms of the "Local Parenting Plan and Companionship Schedule," the schedules stated therein apply unless a court order or decree indicates otherwise.  Appellant is not entitled to the parenting time provisions of the "Local Parenting Plan and Companionship Schedule" absent such trial court order or decree.  Here the trial court ordered appellant to receive three non-consecutive full weeks.  The trial court further ordered "that other parenting matters shall be pursuant to the court's Local Parenting Plan and Companionship Schedule, unless inconsistent with the provisions herein."

{¶ 35} After considering all 16 factors pursuant to R.C. 3109.051(D), the GAL recommendations, the proposed parenting time schedules from both appellant and appellee, and the "preeminent tenets" for "the need for active, mature and emotionally healthy parenting and the need for the boys to thrive in an emotionally healthy and peaceful environment," the magistrate made the following parenting time recommendations:

16.

Based on the evidence and the above authority, and [appellee's] relocation with the boys, the court concludes that it is in the best interest of the boys to revise the parenting time schedule. The court concludes that the following parenting time schedule is just, reasonable and in the boys' best interest, R.C. 309.051(A) and (G).

{¶ 36} The trial court approved the September 24, 2019 magistrate decision and laid out in great detail the new parenting time schedule between the parties. Specifically, appellant argues for a parenting time schedule during the school year to pick up the children after school or activity on Tuesdays, keep them overnight, deliver them to school Wednesday mornings, and then pick them up after school or activity on Wednesdays until 8:00 p.m., plus alternating weekends. We find the trial court ordered everything appellant wanted, except the midweek overnight visits, which were instead ordered when school was not in session

{¶ 37} We reviewed the entire record and did not find the court's attitude was unreasonable, arbitrary or unconscionable. We find the trial court did not abuse its discretion when it determined pursuant to R.C. 3109.051 the parties' new parenting time schedule.

{¶ 38} Appellant's first, second, third and fourth assignments of error are not well-taken.

{¶ 39} Finally, appellee requests an award of attorneys fees pursuant to App.R. 23 because "the foregoing assignments of error submitted by appellant are frivolous."

17.

App.R. 23 states, "If a court of appeals shall determine that an appeal is frivolous, it may require the appellant to pay reasonable expenses of the appellee including attorney fees and costs." Appellee argues, "As demonstrated above, [appellant's] assignments consist simply of repeated assertions that the trial court did not consider certain statutory factors when, on review, such factors have clearly been thoroughly addressed. Nearly identical arguments were made to the instant Court on the prior appeal and dismissed as meritless."

{¶ 40} Appellant responds that this appeal was not frivolous and was not interposed for the mere purpose of delay. Appellant argues, "This appeal has been filed and litigated for the purpose of determining whether the trial court erred in making its Judgment Entry regarding parenting time."

{¶ 41} "'A frivolous appeal is one that presents no reasonable question for review.'" *Kaufman v. Horvath*, 2018-Ohio-435, 105 N.E.3d 659, ¶ 26 (6th Dist.), quoting *Garritano v. Pacella*, 6th Dist. Lucas No. L-09-1256, 2010-Ohio-1702, ¶ 12. "Sanctions imposed under App.R. 23 serve to provide compensation for the non-appealing party for the defense of spurious appeals, and to deter frivolity and preserve the appellate calendar for cases truly worthy of consideration." *Garritano* at ¶ 12. "Attorney's fees may be assessed for a frivolous appeal under the Appellate Rules (see App.R. 23) and under R.C. 2505.35 if 'just cause' can be shown." *Cardinal Partners, Ltd. V. Fernandez Discipline, LLC*, 6th Dist. Lucas No. L-09-1165, 2010 WL 1266475, *1 (Mar. 16, 2010). The Ohio Supreme Court guides us to make "a thorough and

18.

enlightening review of the entire record" when determining an App.R. 23 request. *City of S. Euclid v. Richardson*, 49 Ohio St.3d 147, 152, 551 N.E.2d 606 (1990).

{¶ 42} After a thorough and enlightening review of the entire record, we deny appellee's request for attorneys fees pursuant to App.R. 23. Although we found each assignment of error in this appeal not well-taken, appellant had reasonable grounds for this appeal rooted in the trial court's January 9, 2020 modification of the parties' parenting time schedule.

{¶ 43} On consideration whereof, the judgment of the Wood County Court of Common Pleas, Domestic Relations Division, is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.


A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Mark L. Pietrykowski, J.            _____
                                    JUDGE

Arlene Singer, J.                

Thomas J. Osowik, J.          _____
CONCUR.                                    JUDGE


                                    _____
                                    JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.